IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| ANGELA JONES and VANESSA PRICE, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | Civil Action No. 9:07CV3 |
| v. | § | |
| | § | |
| TEXAS YOUTH COMMISSION, | § | JUDGE RON CLARK |
| | § | |
| *Defendant*. | § | |

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs Angela Jones and Vanessa Price seek damages from Defendant Texas Youth Commission ("TYC") for alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-1, *et seq*. They contend that they were subjected to a hostile work environment based on their gender and that the sexual harassment was so severe and pervasive that they were constructively discharged. Price also alleges that after reporting the harassment, she was subjected to offensive and threatening conduct in retaliation for her complaint.[1] Defendant TYC moved for summary judgment on the grounds that: (1) Plaintiffs' claims regarding Defendant's alleged actions do not constitute a hostile work environment and (2) Defendant's alleged conduct is neither severe nor pervasive enough to constitute constructive discharge.[2]

---

[1] Neither Plaintiff lists retaliation as a separate cause of action in the complaint. The complaint does allege in the Preliminary Statement that "after reporting the harassment, [Plaintiffs] were subjected to offensive and threatening conduct in retaliation for making the complaint." Pl. Comp. ¶ 1 **[Doc. # 1]**. It is undisputed, however, that Plaintiff Jones never reported any of the allegedly harassing conduct until after her resignation, Def. Mot. Sum. J., Ex. D, p. 53, ll. 4-6 **[Doc. # 20]**.

[2] Although Defendant devotes a separate section to Price's retaliation claim in its Reply to Plaintiff's Response to Motion for Summary Judgment **[Doc. # 27]**, Defendant did not argue that the court should grant relief on this claim in its Motion for Summary Judgment.

## I. Background[3]

Plaintiffs Angela Jones and Vanessa Price were employed as Juvenile Correctional Officers by Defendant TYC at the Crockett State School for approximately two to three months. Both began work on February 15, 2006; Plaintiff Price resigned on April 21, 2006 and Plaintiff Jones resigned on May 25, 2006.

During their tenure, both Plaintiffs allege that they were subjected to harassment from co-workers and/or supervisors based on their gender. It is undisputed that Plaintiff Jones never reported any of these alleged incidents to her superiors before she resigned.

Plaintiff Price claims she reported these allegedly harassing incidents to her supervisors and made statements regarding them on at least three separate occasions: once orally to the Officer on Duty during her shift, Mr. Lockhart; once orally to her supervisors Mr. Cummins and Ms. Hyman; and once both orally and in writing to Cummins and Hyman. Defendant denies that a written statement was ever given to Cummins or Hyman. On April 6, 2006, Price was on duty when a fight broke out between several boys under her supervision. At some point, she was told that she was under investigation for failure to restrain one of the boys during the April 6 fight.[4]

---

[3]The court notes that Defendant chose to ignore both provisions of Local Rule CV-56(a), which states, "Any motion for summary judgment must include: (1) a statement of the issues to be decided by the Court; and (2) a 'Statement of Undisputed Material Facts.'" The purpose of this Rule is to allow the court to "assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the 'Statement of Genuine Issues' filed in opposition to the motion," rather than being forced to sift through both parties' motion papers in order to determine whether the parties agree or disagree on a particular point. *See* Local Rule CV-56(c). Therefore, Defendant will not be heard to complain that a key fact buried somewhere in its documents was not properly evaluated.

[4]The parties dispute whether this notification happened before or after Price resigned on April 21.

Both Plaintiffs subsequently filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  Jones was issued a Notice of Dismissal and Rights on November 3, 2006, and Price was issued hers on November 21, 2006.  They filed this action on January 5, 2007.

## II. Standard of Review

The party moving for summary judgment under Fed. R. Civ. P. 56 has the initial burden of demonstrating that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 2514 (1986).  Movant may show that the undisputed material facts affirmatively establish a right to judgment.  Alternatively, movant may establish that the other party has the burden of proof at trial, and has failed to "make a showing sufficient to establish the existence of an element essential to [its] case."  *Nebraska v. Wyoming*, 507 U.S. 584, 590, 113 S. Ct. 1689 (1993), (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2522 (1986)).

In order to avoid summary judgment, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86, 106 S. Ct. 1348, 1335 (1986); *Anderson*, 477 U.S. at 257, 106 S. Ct. at 2514.  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita,* 475 U.S. at 586, 106 S. Ct. at 1356.  Fed. R. Civ. P. 56 requires that the nonmoving party set forth specific facts showing that there is a genuine issue for trial.  *Anderson,* 477 U.S. at 256, 106 S. Ct. at 2514.  Only a genuine dispute over a material fact (a fact which might affect the outcome of the suit under the governing substantive law) will preclude summary judgment.

*Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party on the issue. *Id.* If the factual context renders a claim implausible (for example if the claim simply makes no economic sense) nonmovants "must come forward with more persuasive evidence to support their claim than would otherwise be necessary." *Matsushita*, 475 U.S. at 587, 106 S. Ct. at 1356.

Fed. R. Civ. P. 56(c) requires the court to look at the full record, including the pleadings, depositions, answers to interrogatories, admissions, and affidavits. All reasonable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, and any doubt must be resolved in its favor. *Matsushita*, 475 U.S. at 587, 106 S. Ct. at 1356. However, only *reasonable* inferences in favor of the nonmoving party can be drawn from the evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 468, 112 S. Ct. 2072, 2083 (1992).

### III. Applicable Law

Defendant moves for summary judgment on the grounds that: (1) Plaintiffs' claims regarding Defendant's alleged actions do not make out a hostile work environment claim and (2) Defendant's conduct is neither severe nor pervasive enough to constitute constructive discharge. Defendant also argues that even if it did maintain a hostile work environment by virtue of severe of pervasive sexual harassment, the *Ellerth/Faragher* affirmative defense should apply.

A. Hostile Work Environment[5]

Under Title VII, "it shall be an unlawful employment practice for an employer...to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of...sex." 42 U.S.C. § 2000e-2(a)(1). Plaintiffs can establish a violation of Title VII by demonstrating a hostile work environment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22-23 (1993). For this claim, each Plaintiff must show that: (1) she belongs to a protected class; (2) she was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action.[6] *Shepard v. Comptroller of Pub. Accounts*, 168 F.3d 871, 873 (5th Cir. 1999). Defendant

---

[5] Courts actually recognize two types of sexual harassment: hostile work environment and "quid pro quo" harassment. Quid pro quo harassment conditions promotion or continued employment on sexual favors, and is based on threats that are carried out. *Burlington Indus. v. Ellerth*, 524 U.S. 742, 751, 118 S. Ct. 2257, 2264 (1998). To succeed on a quid pro quo harassment claim, a Plaintiff must demonstrate that she suffered a tangible employment action and that the tangible employment action resulted from her acceptance or rejection of the supervisor's alleged sexual advances. *La Day v. Catalyst Tech, Inc.*, 302 F.3d 474, 481 (5th Cir. 2002). Neither Plaintiff alleges any claim of quid pro quo harassment in the Complaint, only that the harassment experienced was severe and pervasive enough to constitute a hostile work environment.

[6] Where the harassment is allegedly committed by a supervisor with immediate (or successively higher) authority over the harassment victim, the Plaintiff need only satisfy the first four elements. *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001). Jones was allegedly harassed only by Mr. Raven, who was not her supervisor. Def. Mot. For Sum. J. Ex. C, p. 51, ll. 13-22 **[Doc. # 20]**. Price identified her supervisors as Mr. Cummins and one unidentified male. *Id.,* Ex. A, p. 40, ll. 11-19. She further identified Ms. Hyman as "Mr. Cummins['] assistant" and an assistant supervisor. Pl. Resp. Def. Mot. For Sum. J. at 15 **[Doc. # 26]**. In her deposition, Price accused Hyman of harassing behavior; this behavior apparently consisted of asking Price for her telephone number and making it clear "in no uncertain terms that she liked [Price]." Def. Mot. For Sum. J., Ex. A, p. 44, ll. 23-24. Price also indicated in her EEOC Charge of Discrimination that Cummins sexually harassed her, but did not mention any incidents in her affidavit or deposition testimony. *Id.*, Ex. C-11. Because Price alleges at least

does not dispute the first three elements, but argues that neither Plaintiff can demonstrate the final two elements. Def. Mot. For Sum. J. at 14 **[Doc. # 20]**.

For harassment to affect a "term, condition, or privilege of employment" it must be "sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67 (1986); *see also Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 355 (5th Cir. 2001). In determining whether a workplace constitutes a hostile work environment, courts should consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000)(citation omitted).

The first question the court must ask is whether a genuine issue of material fact exists as to whether the alleged sexual harassment was so severe and pervasive that it altered the terms and conditions of the Plaintiffs' employment. In order to be actionable under Title VII, the environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *La Day v. Catalyst Technology, Inc.,* 302 F.3d 474, 482 (5th Cir. 2002). If that question is answered in the affirmative, the court must then determine whether there is a genuine issue of material fact as to whether Defendant knew or should have known of the harassment and failed to take prompt remedial action.

---

some harassing behavior on the part of one or more supervisors, she will not have to demonstrate the fifth element of her hostile work environment claim.

Constructive discharge can be viewed as an aggravated case of hostile work environment sexual harassment. *Pennsylvania State Police v. Suders*, 542 U.S. 129, 146, 124 S. Ct. 2342, 2354 (2004). It is not an independent claim; it is used to explain why a Plaintiff has quit without complaining of the harassment or before the employer's investigation of Plaintiff's complaint is complete. *Aryain v. Wal-Mart Stores Texas, L.P.*, 2007 U.S. Dist. LEXIS 47735 at *6-7 (S. D. Tex. June 30, 2007).[7] "Unless the conditions are unusually severe, the employee is expected to remain on the job while the employer addresses the complaint." *Aryain*, at *7. One who voluntarily quits cannot normally complain that she does not have a job.

"A hostile-environment constructive discharge claim entails something more [than a hostile environment claim]: A plaintiff who advances such a compound claim must show working conditions so intolerable that a reasonable person would have felt compelled to resign." *Suders*, 542 U.S. at 146, 124 S. Ct. at 2354; *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001). In determining whether a reasonable person would feel compelled to resign, courts have looked at the following events:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status].
> *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000)(alteration in original).

Because constructive discharge requires a greater degree of harassment than a hostile

---

[7]As noted *supra*, constructive discharge may also relevant to a quid pro quo harassment analysis, as it can constitute the tangible employment action that claim requires. *See Chavera v. Victoria Indep. Sch. Dist.*, 221 F. Supp. 2d 741, 747-48 (S.D. Tex. 2002)(listing cases in which courts in the Fifth Circuit which have found constructive discharge to be a tangible employment action).

environment claim, it follows that where Plaintiff cannot make out a hostile work environment claim, the evidence will also not support constructive discharge.

B. Defendant's *Ellerth/Faragher* Defense

An employer is strictly liable for harassment by supervisors that "culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 137, 124 S. Ct. 2342, 2349 (2004)(citation omitted). However, where no tangible employment action is taken, the defending employer may ordinarily put forth the *Ellerth/Faragher* affirmative defense. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S. Ct. 2257 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S. Ct. 2275 (1998):

> The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*Faragher*, 524 U.S. at 807, 118 S. Ct. at 2293; *see also Casiano v. At&T Corp.*, 213 F.3d 278, 284 (5th Cir. 2000). An employer will not be able to take advantage of the defense in a hostile work environment case if "the supervisor's official act precipitates the constructive discharge," because this discharge is a tangible employment action. *Suders*, 542 U.S. at 140-41, 124 S. Ct. at 2351.

**IV. Analysis**

1. *Harassment of Plaintiff Jones*

Plaintiff Jones was allegedly harassed by Officer Jerome Raven.[8] Raven is the only

---

[8]In her deposition testimony, Jones makes clear that Raven was not her supervisor. Raven was a JCO 6 in security, and was not in the chain of command for those JCOs who, like

individual Jones accuses of sexual harassment. According to Jones, Raven called her on average of once per day, asking her to "relieve his pressure" (which he allegedly clarified to mean sexual pressure) and soliciting sex. Raven would also come to the dormitory where Jones was working and flirt with her. Jones recounted several other incidents which allegedly occurred during the time she worked at the Crockett School, all involving similar sexually explicit comments made by Raven.

In order to survive summary judgment, the harassment must be "so severe and pervasive that it destroys a protected classmember's opportunity to succeed in the workplace." *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999). The conduct Plaintiff alleges must be more than teasing, rude or offensive comments, or isolated incidents. *Id.* The key is that "implicit or explicit in the sexual content [of the harassment] [must be] the message that the plaintiff is incompetent because of her sex." *Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 270 (5th Cir. 1998).

The Fifth Circuit has consistently found judgment as a matter of law appropriate in hostile work environment claims where some degree of harassing conduct exists, so long as the conduct is not severe and pervasive. For example, in *Shepherd*, the court upheld the district court's grant of summary judgment in favor of Defendant where the offensive behavior was committed by a co-worker who happened to be Plaintiff's fiancee's brother-in-law. The conduct occurred for two years without Plaintiff reporting it to a supervisor. Plaintiff also had a friendly relationship with the accused harrasser outside of work. *Shepherd*, at 872.

---

Jones, were on dormitory duty. In the event Raven was on duty in the dormitory, Jones' supervisor was still the JCO 6 in charge of the dormitory, rather than Raven. Def. Mot. For Sum. J., Ex. D, at p. 49, ll. 7-25, p. 50, ll. 1-20 **[Doc. # 20]**.

In contrast, summary judgment was not appropriate where there was more egregious behavior. *See, e.g., Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 805 (5th Cir. 1996)(where a co-worker repeatedly told Plaintiff that he "knew what she liked to do" because she had seven children, joked to others that Plaintiff "[didn't] know how to use condoms," repeatedly asked her if she had "[gotten] any" the night before, and implied on at least one occasion that Plaintiff had been having sex with her boyfriend in her office at lunch); *Waltman v. Intl. Paper Co.*, 875 F.2d 468, 470-71 (5th Cir. 1989)(where sexually explicit comments were broadcast over the public announcement system several times about Plaintiff, co-workers repeatedly made sexual suggestions to Plaintiff, a supervisor urged her to have sex with a co-worker and on several occasions pinched her buttocks with pliers, Plaintiff received over thirty pornographic notes in her locker, Plaintiff was called a whore and threatened, and sexually explicit graffiti depicting Plaintiff was frequently drawn by co-workers).

As to Jones, the court need not decide whether the behavior at issue in this case is closer factually to *Shepherd* or to *Farpella-Crosby* and *Waltman*. Assuming that Jones could demonstrate that the harassment affected a term, condition, or privilege of her employment, the record is devoid of evidence that her employer knew or should of known of the harassment and failed to take remedial action. By her own admission, Jones never informed her superiors of the harassment until she submitted her letter of resignation. Pl. Resp. to Def. Mot. For Sum. J. at 15 **[Doc. # 26]**. In the absence of any report, it is difficult to imagine how her employer could have known about the harassment and taken steps to remedy it. Jones' hostile work environment claim therefore fails because, even accepting her allegations of harassment as true, she cannot make out the fifth element of the claim.

Having found that Jones has presented no issue of material fact sufficient to support a hostile work environment claim, the court need not consider constructive discharge or the applicability of the *Ellerth/Faragher* defense.

2. *Harassment of Plaintiff Price*

**a. Hostile environment claim**

Plaintiff Price also alleges a series of sexually harassing incidents which occurred while she was employed at the Crockett School. While she recounts eight specific situations, Price stated in her affidavit that someone made a sexually inappropriate comment to her every day that she was working. Pl. Resp. to Def. Mot. For Sum. J., Ex. A, ¶ 25 **[Doc. # 26]**.

Price details eight alleged incidents, involving six different harassers, over the two months she worked at the Crockett School. The first took place shortly after she began working, in which a Mr. Simpson, a Juvenile Corrections Officer Level 4 ("JCO 4")[9], made sexually inappropriate comments to her. After Price told him that she did not "mess around," Simpson allegedly began telling others that Price was homosexual. Price states that she reported the incident to the Officer on Duty for her shift, JCO 6 Mr. Lockhart, but did not submit a written report. *Id.* at ¶ 7-8, Def. Mot. For Sum. J., Ex. B, at p. 106, ll. 3-6 **[Doc. # 20]**.

A second incident took place in March, in which Price received a telephone call from another JCO, Ms. Dennis, in which Dennis told Price to leave her husband (JCO 4 Simpson)

---

[9]Although Defendant has the burden of proof in a motion for summary judgment, its counsel inexplicably chose not to favor the court with a clear description of the hierarchy of JCOs and supervisors at the Crockett School. It appears from the parties' motion papers that the JCO system may be an ascending one, where an entry-level officer like Price or Jones would begin as a JCO 1, and move up in rank as seniority is gained. However, all inferences must be drawn against the moving party.

alone. Pl. Resp. to Def. Mot. For Sum. J., Ex. A, ¶ 9 **[Doc. # 26]**. At that point, Price verbally reported both incidents to two of her supervisors, Ms. Hyman[10] and JCO 6 Mr. Cummins.[11] She stated that she later gave a copy of her written statement to Hyman and put a copy under Cummins' door. *Id.* at ¶ 10; *see also* Def. Mot. For Sum. J., Ex. A, at p. 43, ll. 10-14; Ex. B, at p. 117, ll. 22-25, p. 18, ll. 1-6 **[Doc. # 20]** (reporting harassing telephone calls to Hyman and the incident with Simpson to Cummins in writing).

Price also details six more incidents in which several different individuals (JCO 6 Mr. Raven, JCO 5 Mr. Riley, JCO 6 Mr. Dixon, and a Mr. Berry) made sexually explicit comments to her and/or asked for sex. Pl. Resp. to Def. Mot. For Sum. J., Ex. A, ¶¶ 13-17, 21-22 **[Doc. # 26]**. After the comments of Raven, Price again allegedly reported the incidents to her supervisor Cummins. Price did not provide him with a written statement. Def. Mot. For Sum. J., Ex. B, at p. 120, ll. 4-22 **[Doc. # 20]**.

In summary, Price alleges that over the two months she worked at the Crockett School, she was subject to some sort of sexual harassment every single day. She argues that many of the comments were made in front of inmates or other correctional officers for the purpose of humiliating her, that rumors were spread throughout the school as to her sexuality, and that the comments of at least three of her harassers were intended to convey that Price would have an

---

[10]As noted *supra*, Price also mentioned at her deposition that she had problems with Hyman. These incidents were not detailed in Price's affidavit.

[11]Cummins was Price's direct supervisor when she first began at TYC, and her only JCO 6 supervisor on the 10:00 a.m. to 6:00 p.m. shift. Def. Mot. For Sum. J., Ex. A, at p. 39, ll. 6-8, p. 41, ll. 11-15 **[Doc. # 20]**.

easier time at work if she were to have sex with them.[12]

Viewing the evidence in the light most favorable to Price, the incidents she complains of are extremely pervasive (made by multiple harassers and occurring on a daily basis) and amount to more than merely rude or offensive comments from both an objective and a subjective perspective. In particular, the statements of her co-workers that Price needed to have sex with them in order to survive at the Crockett School implicitly contain the message that she was "incompetent because of her sex." *Butler*, 161 F.3d at 270. That message was that Price might not be able to retain her position merely because she was competent or good at her job; the only way to "get along" was to have sex with her co-workers, superiors, and/or supervisors. Based on this record, the court also finds that Price has put forth sufficient evidence to create a genuine issue of material fact on whether she was constructively discharged.

### b. *Ellerth/Faragher* defense

The first question the court must ask under the *Ellerth/Faragher* "road map" is whether Price has suffered a tangible employment action. *Casiano*, 213 F.3d at 283. The Supreme Court in *Ellerth* described such actions as "an official act of the employer" such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision

---

[12]For example, Price relates that Riley told her that another individual, a Ms. Green, used to have problems when she first began working at the Crockett School, but now "got along" fine because she had sex with Riley. Pl. Resp. to Def. Mot. for Sum. J., Ex. A, ¶ 15 **[Doc. # 26]**. In a discussion regarding the statement Price gave her superiors following the fight on April 6, a Mr. Berry allegedly told Price that "We have been good to you. You should have played along. You Black women always think you should get something for free." *Id.* at ¶ 21. Finally, after Price told Raven that his comments on one occasion were inappropriate, he allegedly stated, "That's what's wrong with bitches today- if you learned to do what you're told to do you might have a good day at work." *Id.* at ¶ 13. Raven's comment was made in front of a group of male co-workers.

causing a significant change in benefits." *Ellerth*, 524 U.S. at 761-62, 118 S. Ct. at 2268. Where a supervisor's official act precipitates the employee's constructive discharge, a tangible employment action has occurred. *Suders*, 542 U.S. at 140-41, 124 S. Ct. at 235. As mentioned *supra,* Price has presented a genuine issue of material fact as to whether a tangible employment action (constructive discharge) took place here.

Even if the court were to assume that no tangible employment action occurred in this case, Defendant's argument that the *Ellerth/Faragher* defense precludes Price's claims still fails because Defendant has not met the requirements of the defense. Having already found that Price presented a genuine issue of material fact on her hostile environment claim, the next questions the court must ask under the *Ellerth/Faragher* inquiry are (1) whether Defendant exercised reasonable care to prevent or, if not prevented, to promptly correct the supervisors' sexually harassing behavior and (2) whether Price unreasonably failed to take appropriate and adequate advantage of the preventative or corrective measures Defendant provided. *See Casiano*, 213 F.3d at 286.

An employer has satisfied the first element of the *Ellerth/Faragher* defense where its harassment policy and its response to the allegations of harassment are both "reasonable and vigorous." *Scrivner v. Socorro Indep. Sch. Dist.*, 169 F.3d 969, 971 (5th Cir. 1999). The employer has the burden to demonstrate this. Defendant argues that it had policies and procedures in place to address sexual harassment allegations and that Price received copies of these policies and procedures during her orientation. Def. Mot. for Sum. J., Ex. C-3 **[Doc. # 20]**.

Defendant points to Price's deposition, in which she agrees with defense counsel's mischaracterization of the reporting requirements under TYC's sexual harassment policy.

Defense counsel states that the policy in PRS 1.02(d)(2)(A) requires an individual to report harassment immediately to one's immediate supervisor, the human resources administrator, the superintendent, or the chief of complaints resolution. However, the requirements of this sub-part apply only to "any employee who observes or learns about conduct that may have been inappropriate sexual conduct *directed toward another employee*." *Id.* Ex. C-3, d(2)(emphasis added).[13]

Defendant's policy for employees who feel they have *themselves* been subject to inappropriate sexual conduct states that "any employee, who feels that they have been subject to inappropriate sexual conduct, must report it immediately in accordance to PRS 35.09." *Id.*, Ex. C-3, at 2. Unfortunately, no copy of PRS 35.09 was submitted with either party's motion papers. As noted *supra*, Defendant has the burden to demonstrate that it had a harassment policy in place and that its responses to allegations of harassment were both reasonable and vigorous. Given the virtually unlimited resources of Defendant, there is no reason why a competently drafted motion, supported by the appropriate documents, could not have been filed. A movant for summary judgment cannot expect the court to simply assume there is evidence in support of its arguments.

In the absence of PRS 35.09, the court is left only with the general grievance reporting scheme, which merely *encourages* the employee to report the grievance to a supervisor, appropriate administrator, or human resources administrator. *Id.,* Ex. C-2 at 2. Price alleges that

---

[13] Even if this was the correct statement of TYC's policy on sexual harassment, Price's actions do not necessarily run counter to this policy. Price stated that she did report several incidents to her supervisor, Mr. Cummins. The passage Defendant points to does not specify the form the complaint must take.

she did so on several occasions in her deposition testimony and affidavit.[14] Although the parties dispute exactly how many reports Price made, to whom she reported the incidents, the time frame she made the reports in, and whether she had reason not to follow TYC's policies, these are questions of fact which made summary judgement on Defendant's *Ellerth/Faragher* defense inappropriate at this time.

## V. Conclusion

Plaintiff Jones has failed to present sufficient evidence to raise a genuine issue of material fact on her hostile environment claim and on constructive discharge. Plaintiff Price has come forward with sufficient evidence to raise a material issue of fact on her hostile environment claim and on constructive discharge.

---

[14]While the court must view the evidence in the light most favorable to Price, there are a number of troubling discrepancies between her deposition testimony and affidavit that seem to contradict the assertion that she reported the harassment to her superiors. As a general rule, "[a] party may not defeat a motion for summary judgment by using an affidavit that, without explanation, impeaches prior testimony." *Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000). Where the assertions in a party's affidavit impeach his or her prior sworn testimony without an explanation, the court should view those assertions with "extreme skepticism." *Herrera v. CTS Corp.*, 183 F. Supp. 2d 921, 928-29 (S.D. Tex. 2002). Defendant quotes from Price's deposition to support its argument that she did not complain or report any of the harassing behavior until after she resigned. While Defendant is correct that at least one segment of her deposition testimony contradicts statements in her affidavit that she reported Riley and Dixon's behavior to her superiors, Price does goes on to state in her deposition that she reported Simpson and Dennis' behavior to Hyman and Cummins, and that she also reported another incident with Raven (not discussed in her affidavit) to Cummins. Def. Mot. for Sum. J. Ex. B, p. 117, ll. 22-25, p. 118, ll. 1-23, p. 120, ll. 11-22 **[Doc. # 20].** Therefore, even if the court were to disregard Price's affidavit, the deposition testimony still supports her claim that she reported at least some of the harassing behavior to her supervisor.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment **[Doc. # 20]** is GRANTED as to Plaintiff Angela Jones and DENIED for Plaintiff Vanessa Price.

So **ORDERED** and **SIGNED** this **4** day of **December, 2007.**

_____
Ron Clark, United States District Judge